UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DESHARNE WOODERTS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 24-3606 (ABJ) |
| MARS INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff Desharne Wooderts filed a complaint for legal and equitable relief against Mars, Inc. ("Mars"); Mars Confectionary Supply; Mars Food; Mars Wrigley; Mars Wrigley Confectionary U.S., LLC; Pacific Marks Esaka; Starburst Duos; Wrigley Starburst; Jane Doe, 1; and Jane Doe, 2.  *See* Compl. [Dkt. # 1–2] ("Compl.").  Plaintiff claims that when she was a child, she sent the candy manufacturers a letter suggesting that two Starburst flavors should be combined in one piece of candy, and that they misappropriated her designs, descriptions, and ideas when they later produced and marketed "Starburst Duos."  Compl. ¶¶ 37–42.  She seeks an award of unspecified damages, punitive damages, and equitable relief, "including but not limited to, moving Mars, Inc. into . . . government trustee receivership for the benefit of Plaintiff Ms. Wooderts, world children, the state, and the country."  Compl. ¶ 48.

For the reasons set forth below and after review of the entire record, the Court will **DENY** plaintiff's motion to remand the case to Superior Court and **GRANT** defendants' motion to dismiss.

## BACKGROUND

When plaintiff was eleven years old, she suggested a candy concept as a school assignment. Compl. ¶ 12. Her idea involved combining two existing Starburst candy flavors into a single piece of candy. Compl. ¶ 12. On an unspecified date, plaintiff submitted her design to Mars, the creator of Starburst, in an unsolicited letter, Compl. ¶ 15, and she alleges that the company notified her by mail that it had received it, Compl. ¶ 18. Plaintiff also asserts that in a signed letter on Mars letterhead, defendants stated that "the idea(s) belonged to Plaintiff Ms. Wooderts," Compl. ¶ 18; "refused" her suggestions and hard work, Compl. ¶¶ 20, 21; and "promised" her "not to use anything contained in that letter." Compl. ¶ 21. The complaint gives no hint as to how long ago this took place, although it appears that plaintiff is now an adult: the complaint describes her as "a real taxpayer within the United States of America," Compl. ¶ 30, who is now a parent herself. Compl. ¶ 34.

On February 19, 2019, Mars announced on PR Newswire, a press release distributor, a new candy product called "Starburst Duos" that combined two flavors into a single piece of candy. Compl. ¶ 25. On the following day, February 20, 2019, popculture.com published an article reporting that Mars had begun selling the Starburst Duos the day before. Compl. ¶ 26. The article notes that "the treats were first teased back in November, with Delish having reported that the fruity new fusions would be hitting store shelves sometime in 2019 featuring two flavors in one burst." According to the defendants, the reference to Delish in the February 20, 2019 popculture.com article operated as a link to a post on the food website Delish.com dated November 1, 2018, unveiling Starburst Duos. *See* Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s Compl. [Dkt # 12-1] ("Dismissal Memo.") at 6; *see* Ex. B to Dismissal Memo. [Dkt # 12-3] ("Ex. B").

On February 18, 2022, plaintiff took steps to initiate this action in the Superior Court of the District of Columbia. Dismissal Memo. at 3. Her complaint, which was filed by plaintiff's then counsel, was not in compliance with D.C. Superior Court Rule 11(a), because it lacked a signature, summons, and case information sheet. A notice was sent out by the court, stating a signature had been omitted from the filing, and the valid signed complaint was not submitted until February 28, 2022.

The complaint includes ten claims for relief. Compl. ¶¶ 37–47. Counts One through Six allege the misappropriation of plaintiff's design or designs: (1) "acquisition misappropriation of design(s)"; (2) "acquisition misappropriation of candy-cover design(s)"; (3) "improper disclosure misappropriation of design(s)"; (4) "improper disclosure misappropriation of candy-cover design(s)"; (5) willful and malicious misappropriations of the designs"; and (6) willful and malicious misappropriations of the candy-cover designs. Compl. ¶¶ 37–42. Count Seven seeks relief on a quantum meruit theory based on "valuable services and goods" plaintiff rendered to defendants. Compl. ¶ 43. Count Eight alleges that defendants were unjustly enriched by "us[ing] the benefit of [plaintiff's] services, goods in the form of the design(s), descriptions(s), and idea(s)." Compl. ¶ 44. Counts Nine and Ten allege intentional and negligent infliction of emotional distress when defendants "disregard[ed] their promise not to use [plaintiff's] design(s), description(s), and ideas." Compl. ¶¶ 45–46.

Defendants removed the case to this Court on December 26, 2024. Notice of Removal [Dkt # 1] ("Notice") at 1.

On January 22, 2025, plaintiff filed a motion to remand the case, *see* Mot. to Remand to State Court [Dkt. # 10] ("Remand Mot."), and on January 23, 2025, defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) the

3

complaint is barred by the statute of limitations; and (2) it fails to allege any cognizable cause of action. *See* Defs.' Mot. to Dismiss [Dkt # 12] ("Defs.' Mot.") at 1–2; *see also* Dismissal Memo. Both motions are fully briefed, and each party opposes the other's motion. *See* Response to Remand Mot. [Dkt. # 21] ("Remand Opp."); Pl.'s Mem. in Opp. to Defs.' Mot. [Dkt # 19] ("Dismissal Opp."); Defs.' Reply in Supp. of Mot. to Dismiss Pl.'s Compl. [Dkt # 24] ("Dismissal Reply").

## STANDARD OF REVIEW

### Subject Matter Jurisdiction

A defendant may remove a civil action from a state court to the federal district court when the district court has original jurisdiction. 28 U.S.C. § 1441(a); *see Julien v. CCA of Tenn., Inc.*, 268 F. Supp. 2d 19, 21 (D.D.C. 2003). A federal district court has original jurisdiction when the amount in controversy in the civil action exceeds $75,000, exclusive of interest and costs, and the action is between "citizens of different states." 28 U.S.C. § 1332(a). When a plaintiff seeks to remand a case that was removed to federal court, "[t]he party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the West*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005); *see also Phillips v. Corr. Corp. of Am.*, 407 F. Supp. 2d 18, 20 (D.D.C. 2005) (placing the burden of proving jurisdiction on the defendant when the plaintiff files a motion to remand). "Because federal courts are courts of limited jurisdiction," they must strictly "strictly construe[]" the removal statute. *Int'l Union*, 366 F. Supp. 2d at 36 (citation omitted). Any doubts as to whether federal jurisdiction exists must be resolved in favor of remand. *Id.*

Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

The pleadings of pro se parties are "to be 'liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[1] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, even though a pro se complaint must be liberally construed,

---

1   While plaintiff may have had assistance from an attorney at some point, it appears that she is now proceeding pro se. For this reason, the Court affords her the leniency given to pro se plaintiffs.

the complaint must nonetheless "present a claim on which the court can grant relief." *Chandler v. Roche*, 215 F. Supp. 2d 166, 168 (D.D.C. 2002), citing *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.      Plaintiff's Motion to Remand Will Be Denied.**

In her motion for remand, plaintiff argues that this Court does not have subject-matter jurisdiction given a lack of complete diversity between the parties. Remand Mot. at 13.

Plaintiff does not identify her state of residence in the complaint, *see* Compl. ¶ 10 (averring only that plaintiff "consents to jurisdiction"), but she implies in her motion that she is a resident of Texas. *See* Compl. ¶ 13 (stating that one of Mars's primary production facilities is in Texas and that "no diversity of citizenship appears to have been accomplished based on the pleadings, particularly, if Defendants have a principle (*sic*) place of business in the state resided by the Plaintiff").

For purposes of diversity jurisdiction, a corporation is considered a citizen of both its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). "In practice it should normally be the place where the corporation maintains its headquarters –

provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Id.* at 93. "A corporation's 'nerve center' . . . is a single place." *Id.*

Defendants have supplied information to show that Mars is incorporated in the state of Delaware, and it is headquartered in McLean, Virginia, where its corporate executives and directors are located and operate the company's business. *See* Remand Opp. at 2–3; Ex. A to Remand Opp. (Virginia Secretary of State records); Ex. A. to Notice of Removal (civil cover sheet). Plaintiff relies instead on the results of an inquiry posed to "open informational AI source" ChatGPT to argue that diversity jurisdiction has not been shown; according to her (and ChatGPT), "Mars Wrigley, the company that owns Starburst, manufactures Starburst candies at multiple facilities around the world. In the United States, one of the primary locations for Starburst production is in Waco Texas." Remand Mot. at 12–13. That may be true, but the location of a manufacturing facility is not the determining factor.

Given that neither defendant Mars's state of incorporation nor its principal place of business is in Texas, where plaintiff suggests she resides, diversity jurisdiction exists. Accordingly, plaintiff's motion to remand will be denied.[2]

## II. Plaintiff's Misappropriation Claims Will Be Dismissed.

Defendants argue that the complaint fails to state a claim because: (1) plaintiff's claims are barred by the applicable statute of limitations; and (2) the allegations in the complaint are insufficient to state any cognizable legal claims. Defs.' Mot. at 1–2.

---

2   These facts leave the Court questioning why venue is proper in the District of Columbia, but since neither party has raised that issue, the Court declines to address it here.

**A. The statute of limitations has expired.**

A motion to dismiss may be granted on statute of limitations grounds only if "the facts giving rise to the defense are apparent on the face of the complaint." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F.Supp.2d 287, 292 (D.D.C. 2005). As the D.C. Circuit has cautioned, "because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).

Under D.C. law, a three-year statute of limitations period applies to all actions "for which a limitation is not otherwise prescribed," and it is measured "from the time the right to maintain the action accrues." D.C. Code § 12-301(a). Plaintiff's opposition does not suggest that any other time limit applies, *see* Compl. ¶ 26 (identifying February 19, 2019, as a "possible date of initiation of statute of limitations"); her main objection to the motion to dismiss appears to be that the defendants did not file an "answer," *see* Dismissal Opp. at 13–14,[3] even though what both the D.C. and federal rules require is a "responsive pleading." *See* D.C. Super. Ct. R. 12(a); Fed. R. Civ. P. 12(a).

Putting plaintiff's procedural objection aside, the question to be determined, then, is when the cause of action accrued. And in her complaint, plaintiff points to February 19, 2019, the date PR Newswire published an article about the availability of the two-flavor Starbursts, as when the statute "possibly" began to run. Compl. ¶¶ 25–26. Plaintiff does not allege that she saw the article,

---

3   "As a statement, perhaps for the mere agape love towards all little girls or children in America, the Defendants really decided not to Answer the Complaint. . . . A defendant must serve an answer within 21 days after being served with the summons and complaint. Each defendant decided not to serve Plaintiff or Counsel of the Plaintiff with an answer 21 days of any of the complaints and summons." Dismissal Opp. at 14.

so she appears to be acknowledging that a public announcement put her on notice of a potential claim.[4]

The District of Columbia applies the discovery rule, *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996), and under D.C. law, the "statute of limitations begins to run when a plaintiff has either actual or inquiry notice of (1) the existence of the alleged injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Drake v. McNair*, 993 A.2d 607, 617 (D.C. 2010).

Plaintiff points to February 19, 2019, the date PR Newswire published an article on Starburst Duos, which was also the date identified in the popculture.com post as when the new candy was first marketed, as "a possible date of initiation of statute of limitations." Compl. ¶¶ 25–26. And in the next paragraph of the complaint, she alleges, "[o]n February 20, 2019, defendant had intentionally taken design(s), description(s), and ideas . . . ." Compl. ¶ 27. However, plaintiff's reliance on these publications reveals that the impending release of the new candy was a matter of public knowledge even earlier than that. The popculture.com article plaintiff refers to in the complaint states that Starburst Duos were publicly announced on the food website Delish in November of 2018. Dismissal Memo. at 5; *see* Ex. B.[5]

As the D.C. Circuit has explained, "[a] court may [] consider documents attached to a motion to dismiss if they are 'referred to in the complaint,' integral to the claim(s), and if their authenticity is undisputed." *Langeman v. Garland*, 88 F.4th 289, 292 (D.C. Cir. 2023), citing *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Thus, plaintiff's reference to these

---

4   Plaintiff also seems to point to May 2020 as when she "discovered" the existence of the two-flavored candy, Compl. ¶ 28, so the complaint is not a model of clarity on this issue.

5   Defendants also note that the popculture.com article contained a link to the earlier Delish article, but that link is no longer operative.

9

materials reveals that any claim would have accrued on November 1, 2018, and plaintiff had until November 1, 2021, to file her complaint. Plaintiff did not file her complaint until February 18, 2022, at the earliest. Therefore, to the extent one agrees with the plaintiff that her cause of action accrued, and she knew or should have known she had a claim, when the public was informed about the defendants' intention to market a two-flavored candy, the claims in Counts One through Six of the complaint are time-barred.

### B. The complaint fails to state a misappropriation claim.

Even if plaintiff's claims are not time-barred, the complaint does not state a misappropriation claim on which the Court can grant relief. Although plaintiff was represented by an attorney at the time the complaint was filed, it is largely overwrought and unintelligible, and not one of the overlapping and highly repetitive first six causes of action contains a reference to any statute or other legal basis for the claim. Plaintiff identifies the causes of action as "Acquisition Misappropriation of Design(s)," Compl. ¶ 7, which seems to be referring to the design of the candy itself; "Acquisition Misappropriation of Candy-Cover Design," Compl. ¶ 38; "Improper Disclosure Misappropriation of Design(s)," which again appears to reference the candy, Compl. ¶ 39: "Improper Misappropriation of Candy-Cover Design," Compl. ¶ 40; "Willful and Malicious Misappropriation of the Design(s)," referring to the candy, Compl. ¶ 41; and "Willful and Malicious Misappropriation of the Candy-Cover Design," Compl. ¶ 42.

Paragraph 39 refers to plaintiff's "trade secret design," paragraph 40 refers to plaintiff's "trade secret(s) candy-cover design," and paragraph 41 alleges that defendants "knowingly and consciously reproduced the trade secret(s) of plaintiff." Construing the complaint liberally as the Court is required to do, and granting the now pro se plaintiff the benefit of a less stringent standard of review, the Court will conclude that plaintiff is seeking to ground her legal claims on the federal

10

Defend Trade Secrets Act ("DTSA") and/or the D.C. Uniform Trade Secrets Act ("DCUTSA"). But plaintiff does not set forth facts that plausibly allege the necessary elements of either cause of action.

Under both DTSA and the DCUTSA, the complaint must allege: (1) the existence of a trade secret; (2) that the trade secret was misappropriated; and (3) damages caused by the misappropriation. *See* 18 U.S.C. § 1839(3); D.C. Code § 36-401(4). "The 'threshold inquiry' in every trade secret case is 'whether or not there [is] a trade secret to be misappropriated.'" *DSMC, Inc., v. Convera Corp.*, 479 F. Supp. 2d 68, 77 (D.D.C. 2007), quoting *Catalyst & Chem. Servs. v. Glob. Ground Support*, 350 F. Supp. 2d 1, 8 (D.D.C. 2004). Under both statutes, a "trade secret" is defined as information that "derives independent economic value . . . from not being generally known" when "the owner . . . has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); *see* D.C. Code § 36-401(4) (defining a "trade secret" to be information that "(A) [d]erives actual or potential independent economic value from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and (B) [i]s the subject of reasonable efforts to maintain its secrecy").

Here, notwithstanding the conclusory use of the term "trade secret," plaintiff does not allege any facts that would give rise to an inference that her design was a secret, that it derived any value from the fact that it was not generally known, or that she made any efforts to protect it. Indeed, she acknowledges sending an unsolicited letter describing the candy concept to Mars, *see* Compl. ¶ 15 ("Plaintiff Wooderts, encouraged by her teacher, wrote a description(s) of her design(s) on paper and mailed, through the United States Post Office, to Mars. Inc for designing the 'newest' and 'bestest' new candy in the world."), and Compl. ¶ 14 ("Determined, this 11 year old started to draw her designs for her new candy to be produced for all the children in the world,

11

especially for herself."), and she mentions that she shared the idea with her teacher and peers, negating any claim of secrecy. *See Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 208 F. Supp. 3d 219, 232–33 (D.D.C. 2016) (dismissing misappropriation of trade secrets claim because the complaint contained no factual allegations that any of the information defendants allegedly misappropriated was valuable because of its secrecy or that the plaintiff used reasonable efforts to safeguard its secrecy).

Plaintiff also does not allege facts showing misappropriation as defined under DTSA or DUTSA. "Misappropriation" means either "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent by a person . . . ." *See* 18 U.S.C. § 1839(5); D.C. Code § 36-401(2). Plaintiff did not attach the letter she sent to Mars or the company's response, but what she alleges does not show that the defendants improperly acquired or actually used plaintiff's trade secret. *See* Compl. ¶ 20 (defendants responded by thanking her for her suggestion but refusing to accept it to "avoid confusion of ownership."). Plaintiff's allegations that the company stored, preserved, or used her design are all entirely conclusory, and they are insufficient to state a plausible claim.

Finally, plaintiff has failed to allege facts demonstrating that the alleged misappropriation caused her damages. There are no facts alleged to show that product's development or market success was in any way attributable to her submission; instead, plaintiff suggests that she was not alone in proposing a candy combination. She quotes the company as saying "we must refuse many wonderful suggestions each year — some very similar to yours." Compl. ¶ 20. Without factual support linking the alleged use of her freely offered idea to any harm, the complaint fails to state a misappropriation claim.

12

**III.     Plaintiff's Quantum Meruit and Unjust Enrichment Claims Will Be Dismissed.**

As an initial matter, defendants argue that plaintiff's quantum meruit and unjust enrichment claims are also barred under the statute of limitations. As was the case for plaintiff's misappropriation claims, the statute of limitations for quantum meruit and unjust enrichment claims is three years. *See Glenn v. Fay*, 281 F. Supp. 3d 130, 134 (D.D.C. 2017), citing D.C. Code § 12–301(8). For both claims, "the statute of limitations begins to run 'when the plaintiff's last service has been rendered and compensation has been wrongfully withheld.'" *Id.* at 136, quoting *News World Commc'ns v. Thompsen*, 878 A.2d 1218, 1219 (D.C. 2005). This is a two-part test in which the second part "requires determining when compensation has wrongfully been withheld from the plaintiff." *Id.* The date of that rejection is significant "because quantum meruit and unjust enrichment claims can only accrue 'when the defendant's enrichment is unjust.'" *Id.*, quoting *Thompsen*, 878 A.2d at 1225 (emphasis omitted).

Plaintiff identifies May 6, 2020 as the date she "discovered" her design had been used or taken, and when she "sent a text to her relative in disbelief." Compl. ¶¶ 28, 29. She also asserts that she contacted defendants at some point in time after the announcement of Starburst Duos in the article on popculture.com. Compl. ¶ 43 ("Before the three-year statute of limitations from discovery of the services, goods were used and from the date the defendant advertised the use of services, goods had accrued, Plaintiff Ms. Wooderts reached out to the defendant(s) for remuneration of their use of services, goods, but defendant(s) declined to pay."). Plaintiff does not specify when she contacted defendants or when the alleged request for payment was refused; the only allegations that suggest a time frame for when she was harmed point to May 6, 2020. *See* Compl. ¶¶ 27–28. Thus, the Court lacks sufficient information to determine whether plaintiff's equitable claims are time barred. However, plaintiff's claims fail for other reasons.

13

To state a claim for quantum meruit, a plaintiff must allege: "(1) that valuable services were rendered, (2) to the person from whom recovery is sought, (3) *which services were accepted by that person*, and (4) under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person." *Dorsky Hodgson & Partners, Inc. v. Nat'l Council of Sr. Citizens*, 766 A.2d 54, 58 (D.C. 2001), quoting *Vereen v. Clayborne*, 623 A.2d 1190, 1193–94 (D.C. 1993) (emphasis added). This claim fails on the face of the complaint. While plaintiff does not supply a copy of the letter the Mars company sent to her as a child, she quotes it in paragraph 20 of the complaint as saying: "to avoid confusion of ownership . . . we must refuse many wonderful suggestions each year, some very similar to yours." *See also* Compl. ¶ 21 (referring to "the refusal of the hard work by defendant(s)" and "the refusal of the defendant(s) to use the design(s), description(s), and "idea(s) . . . ."). Therefore, the complaint does not plausibly allege that plaintiff's services were "accepted."

A claim for unjust enrichment requires a "plaintiff to demonstrate that '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *UMC Dev., LLC v. D.C.*, 120 A.3d 37, 48 n.31 (D.C. 2015), quoting *Euclid St., LLC v. D.C. Water & Sewer Auth.*, 41 A.3d 453, 463 n.10 (D.C. 2012). Plaintiff did not append a copy of her letter or the company's response to the complaint, but what she alleges does little to establish that she conferred a "benefit," since Mars told her it had already received suggestions "very similar to" hers. Compl. ¶ 20. Also, any allegations that the defendants "retained" the benefit are entirely conclusory; the complaint is devoid of any factual allegations that defendants actually held onto or used her idea. Compl. ¶¶ 15–20.

Moreover, plaintiff does not allege that the letter contained any indication that the idea was submitted with an expectation of payment, nor does she allege that defendants solicited her submission. Sending an unsolicited letter does not create an obligation for the recipient to compensate the sender, and plaintiff alleges no facts to support a plausible inference that she expected to be paid for her idea at the time of its submission.[6] *See H.G. Smithy Co. v. Wash. Med. Ctr.*, 374 A.2d 891, 894 (D.C. 1977) ("Unless a recipient of services is put on notice by unambiguous circumstances that the party providing those services is working for the recipient with the expectation of compensation from the recipient, the recipient cannot be held liable for a commission even if the recipient makes use of those services."); *Brown v. Brown*, 524 A.2d 1184, 1186 (D.C. 1987) ("[A] promise to pay will be implied in law when one party renders valuable services that the other party *knowingly* and *voluntarily* accepts.") (emphasis added). Plaintiff fails to allege any agreement—express or implied—between herself and defendants such that she could expect compensation for her submission, and her allegation that the company "refused" her design, specifically "to avoid confusion of ownership," is contrary to what she must allege for this claim to proceed. Therefore, Counts 7 and 8 fail to state equitable claims upon which relief can be granted.

**IV.   Plaintiff's Emotional Distress Claims Will Be Dismissed.**

The final counts in the complaint, Count 9 for intentional infliction of emotional distress ("IIED") and Count 10 for negligent infliction of emotional distress ("NIED"), allege that plaintiff

---

6   *See* Compl. ¶ 13 ("The 11 year old really didn't know much about how to use the computer but she really wanted to get an 'A' . . . . "); Compl. ¶ 14 ("Determined, this 11 year old started to draw her designs for her new candy to be produced for all the children in the world, especially for herself. Plaintiff Ms. Wooderts really loved her Starbursts and really had hope. She was convinced that anyone that made Starburst would understand how great this new candy was going to be for all the children.").

has suffered extreme emotional distress as a result of defendants' use of her Starburst Duos idea. Compl. ¶¶ 45–46. Defendants argue first that these counts are time barred, like the misappropriation claim. *See* D.C. Code § 12–301(8), stating that the statute of limitations is three years for actions not otherwise specially prescribed. Plaintiff cites February 19, 2019, the date of the PR Newswire article, as the potential start of the statute of limitations period. Compl. ¶¶ 25–26. Plaintiff, however, also cites May 6, 2020, as the date when defendants caused her harm. Compl. ¶¶ 27–29. Assuming arguendo that the PR Newswire article marks the accrual of her IIED and NIED claims, these claims have lapsed. But even if plaintiff's claims were not time barred, they would still fail.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant; (2) intent or recklessness in causing emotional distress; and (3) severe emotional distress suffered by the plaintiff. *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C. 1980), citing Restatement (Second) of Torts § 46 (1965). As to the claim based on negligence, a plaintiff must show that the defendant owed the plaintiff a specific duty of care, the breach of which caused the emotional distress. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–11 (D.C. 2011). Here, the complaint does not allege any facts demonstrating extreme or outrageous conduct by defendants. Plaintiff asserts only that she submitted an unsolicited letter to defendants and that they later introduced a candy product she believes is similar to her idea. Compl. ¶¶ 23–25. This does not approach the level of outrageousness required for an intentional infliction of emotional distress claim. *See Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (noting that conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency"). Furthermore, the negligence claim fails because plaintiff has not identified any special relationship or duty owed to her by the defendants.

16

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**. A separate order will issue.

*Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: December 3, 2025